NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

KELLY et al.,

    Plaintiffs,

v.

RUBY TUESDAY RESTAURANT et al.,

    Defendants.

**Civil Action No. 12-2034**

**OPINION**

**CHESLER**, District Judge

This matter comes before the Court upon the motions by Defendant Ruby Tuesday, Inc. for partial summary judgment[1] (Docket Entry 18) and to exclude evidence offered by Plaintiffs' expert, Michael G. Natoli (Docket Entry 19). Plaintiffs Tim and Sigrid Kelly have opposed the motions. (Docket Entries 22 & 23). The Court has considered the parties' submissions and opts to rule without oral argument. See Fed. R. Civ. P. 78. For the reasons discussed below, this Court will grant the motion for partial summary judgment.[2]

---

[1] The Court notes that Ruby Tuesday does not describe its motion as one for partial summary judgment. However, Ruby Tuesday only briefed Plaintiffs' negligence and *per quod* claims, even though the Complaint also asserts claims for "nuisance" (Count IV) and strict liability (Count V). The Court takes no position the colorability of these claims, but the Court will treat the motion as one for partial summary judgment.

[2] Because the Court is convinced that Ruby Tuesday is entitled to partial summary judgment even with Natoli's expert testimony, the Court will accept Natoli's testimony for the purposes of deciding the motion.

I.   **FACTUAL BACKGROUND**

This case arises out of a slip-and-fall accident. On September 28, 2011, Tim Kelly dined with his friend Al Moskowitz at a Ruby Tuesday restaurant located in Toms River, New Jersey. Kelly suffers from spina bifida and walks with the aid of crutches. According to Kelly, as he was leaving the restaurant, his crutches slid out from under him and he fell to the ground on a tiled portion of the restaurant near the salad bar, injuring his left knee. Kelly brought suit in New Jersey Superior Court, Essex County, Law Division, alleging, among other things, that Ruby Tuesday was negligent in failing to maintain the premises and in failing to warn Kelly of a dangerous condition. Ruby Tuesday removed and has now moved for summary judgment on Plaintiffs' negligence and *per quod* claims.

II.  **DISCUSSION**

A.   **Jurisdiction**

This Court has diversity jurisdiction over the case pursuant to 28 U.S.C. § 1332(a)(1). Ruby Tuesday is a Georgia corporation with its principal place of business in Tennessee; Tim and Sigrid Kelly are New Jersey citizens; and the amount in controversy exceeds $75,000.

B.   **Summary Judgment Standard**

The standard upon which a court must evaluate a summary judgment motion is well-established. Federal Rule of Civil Procedure 56(a) provides that summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Kreschollek v. S. Stevedoring Co., 223 F.3d 202, 204 (3d Cir. 2000). In deciding a motion for summary judgment, a court must construe all facts

and inferences in the light most favorable to the nonmoving party. See Boyle v. County of Allegheny Pennsylvania, 139 F.3d 386, 393 (3d Cir. 1998). The moving party bears the burden of establishing that no genuine issue of material fact remains. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). "[W]ith respect to an issue on which the nonmoving party bears the burden of proof . . . the burden on the moving party may be discharged by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." Celotex, 477 U.S. at 325.

Once the moving party has properly supported its showing of no triable issue of fact and of an entitlement to judgment as a matter of law, the non-moving party "must do more than simply show that there is some metaphysical doubt as to material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The party opposing the motion for summary judgment cannot rest on mere allegations and instead must present actual evidence that creates a genuine issue as to a material fact for trial. Anderson, 477 U.S. at 248; see also Fed. R. Civ. P. 56(c) (setting forth types of evidence on which nonmoving party must rely to support its assertion that genuine issues of material fact exist). "[U]nsupported allegations . . . and pleadings are insufficient to repel summary judgment." Schoch v. First Fid. Bancorporation, 912 F.2d 654, 657 (3d Cir. 1990). "A nonmoving party has created a genuine issue of material fact if it has provided sufficient evidence to allow a jury to find in its favor at trial." Gleason v. Norwest Mortg., Inc., 243 F.3d 130, 138 (3d Cir. 2001). If the nonmoving party has failed "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial, . . . there can be 'no genuine issue of material fact,' since a complete failure of proof concerning an essential element of the

nonmoving party's case necessarily renders all other facts immaterial." Katz v. Aetna Cas. & Sur. Co., 972 F.2d 53, 55 (3d Cir. 1992) (quoting Celotex, 477 U.S. at 322-23).

**B.     Analysis**

Ruby Tuesday has moved for summary judgment on the grounds that Plaintiffs can point to no admissible evidence that would allow a jury to find that the floor where Kelly fell was in a slippery or otherwise dangerous condition, that a dangerous condition caused Kelly's fall, or that Ruby Tuesday was aware of the allegedly dangerous condition. Because the Court agrees that Plaintiffs have not established that Ruby Tuesday had notice of the allegedly dangerous condition, the Court will grant the motion for summary judgment.[3]

"In negligence cases under New Jersey law, a plaintiff must establish that defendant breached a duty of reasonable care, which constituted a proximate cause of plaintiff's injuries." Keith v. Truck Stops Corp. of Am., 909 F.2d 743, 745 (3d Cir. 1990). "It is well recognized that the common law imposes a duty of care on business owners to maintain a safe premises for their business invitees because the law recognizes that an owner is in the best position to prevent harm." Stelluti v. Casapenn Enterprises, LLC, 203 N.J. 286, 306 (2010). "Ordinarily an injured plaintiff asserting a breach of that duty must prove, as an element of the cause of action, that the defendant had actual or constructive knowledge of the dangerous condition that caused the

---

[3] With respect to whether a dangerous condition existed at all, Ruby Tuesday relies heavily on the deposition testimony of Kelly, Moskowitz, and other witnesses who stated that they did not "see" any grease or any other substance on the tile floor where Kelly fell, or on the adjacent carpeting. But Kelly testified at his deposition that his crutches felt "greasy" to the touch, and Moskowitz indicated that he tested the area of the floor where Kelly fell with his foot, and it slid. So while it may be technically true that none of the witnesses stated that they "saw" any foreign substance on the floor, there is sufficient evidence for a jury to conclude that such a substance was present.

4

accident." Nisivoccia v. Glass Gardens, Inc., 175 N.J. 559, 563 (2003). However, under New Jersey law, a plaintiff need not prove that element where "as a matter of probability, a dangerous condition is likely to occur as the result of the nature of the business, the property's condition, or a demonstrable pattern of conduct or incidents." Id. In such circumstances, a plaintiff is afforded "an inference of negligence, imposing on the defendant the obligation to come forward with rebutting proof that it had taken prudent and reasonable steps to avoid the potential hazard." Id. at 563-64. This is referred to as the "mode-of-operation rule." See id. at 564; Wollerman v. Grand Union Stores, Inc., 47 N.J. 426, 429 (1966).

Ruby Tuesday moved for summary judgment on the negligence claim on the grounds that Plaintiffs failed to offer any evidence that Ruby Tuesday had actual or constructive notice of the allegedly dangerous condition that Plaintiffs maintain caused Kelly's fall. In opposition, Plaintiffs argue the mode-of-operation rule relieves them of an obligation to establish the notice element. Ruby Tuesday contends that the mode-of-operation rule does not apply to this case, because Plaintiffs have failed to establish a necessary causal link between the hazardous condition and its known source. In resolving the motion, the Court must therefore address whether New Jersey's mode-of-operation rule applies.

The New Jersey Supreme Court cases that formulated and developed the mode-of-operation rule generally involved plaintiffs injured by hazards created by self-service business practices by the defendant premises owner. For example, in Bozza v. Vornado, Inc., the plaintiff, a customer at a self-serve cafeteria, slipped and fell on a "'sticky,' 'slimy' substance" after having ordered a drink at the counter. 42 N.J. 355, 358 (1964). The plaintiff conceded that there was no testimony that would establish that the defendant cafeteria had notice of the

dangerous condition that caused her fall, but the New Jersey Supreme Court held that the absence of such testimony was not, under the circumstances, a fatal flaw. Id. at 358-59. Instead, the Court charged the cafeteria "with constructive notice of the hazardous condition of the floor from the nature and operation of the business itself . . . ." Id. at 359.

The New Jersey Supreme Court applied the doctrine again in Wollerman, supra, 47 N.J. at 428. There, the plaintiff sustained injuries when she stepped on a string bean and fell to the ground while shopping at the defendant's supermarket. Id. The New Jersey Supreme Court stated that if an operator chooses to sell greens from open bins on a self-service basis, "he must do what is reasonably necessary to protect the customer from the risk of injury that mode of operation is likely to generate." Id. at 514. Finally, the New Jersey Supreme Court reaffirmed the rule in Nisivoccia, supra. There, the plaintiff slipped and fell on some loose grapes when approaching the checkout lanes in a supermarket. Nisivoccia 175 N.J. at 561. At trial, the evidence showed that the defendant supermarket sold grapes to customers in clear plastic bags that were open at the top and had slits for air vents on the sides. Id. at 562. The defendant was granted a directed no-cause verdict, because the plaintiff had failed to produce any evidence of the store's actual or constructive notice of a dangerous condition. Id. at 563. On appeal, the New Jersey Supreme Court canvassed its precedents and held that the plaintiff was entitled to a mode-of-operation jury instruction. Id. at 559. The court was careful to emphasize that the mode-of-operation rule arose out of the risks associated with customer self-service, stating that "[a] mode-of-operation charge is appropriate when loose items that are reasonably likely to fall to the ground during customer or employee handling would create a dangerous condition." Id. at 565.

More recently, two recent opinions issued by the Appellate Division of the New Jersey Superior Court have clarified the point that the mode-of-operation rule applies only where a plaintiff has established a connection between the allegedly dangerous business practice and the identified cause of the plaintiff's injuries. In Cordasco v. Walgreen Co., a customer slipped and fell on a waxy, crayon-like substance while walking down a shopping aisle at the defendant drug store. A-1636-10T3, 2011 WL 5118996, at *1 (N.J. Super. Ct. App. Div. Oct. 31, 2011). The trial court rejected the mode-of-operation rule and granted the defendant summary judgment. On appeal, the Appellate Division held that the mode-of-operation rule did not apply because the plaintiff had not established a nexus between the supposed hazard and the plaintiff's fall. Id. at *3 ("Here, there is no evidence whatsoever that the self-service bins contained open bags or containers, that there was any waxy-like substance or crayon-type material in the bins, or that the substance on the floor came from the bins or the merchandise in the bins.").

Similarly, in Cashour v. Dover Parkade, LLC, the plaintiff slipped and fell off a curb at a shopping center. A-4241-11T2, 2013 WL 560914, at *1 (N.J. Super. Ct. App. Div. Feb. 15, 2013). The plaintiff's theory of the case was that her foot slipped on a plastic bag that had leapt from an overflowing garbage can nearby. Id. The trial court granted summary judgment to the defendants on the grounds that there was no actual or constructive notice of the hazardous condition. On appeal, the Appellate Division declined the plaintiff's invitation to apply the mode-of-operation rule for the same reason as in Cordasco. The Cashour Court held that prior mode-of-operation cases "all involved a direct causal link between the object slipped on and its known source, the latter originating in a particular circumstance, manner or method by which the defendant operated its business." Id. at *6. In contrast, the plaintiff in Cashour had "provided no

proof whatsoever as to the source of the substance on which she allegedly slipped," only stating that she saw "something white" on her foot and speculating about its source. Id. Although Cordasco and Cashour are unpublished opinions that are not treated as precedential, this Court regards them as persuasive authority in assessing how expansively the New Jersey Supreme Court would interpret its mode-of-operation rule.[4] This Court agrees with Cordasco and Cashour's interpretation of Nisivoccia and its antecedents and thus subscribes to the view that the mode-of-operation rule may be used only where a plaintiff has established a causal nexus between the "mode of operation" the plaintiff's injuries.

Plaintiffs in this case have failed to establish the existence of such a causal nexus. Plaintiffs are, frankly, less than clear about what specific business practice they allege posed a foreseeable risk of injury to customers, but their opposition brief points to Ruby Tuesday's operation of a self-serve salad bar:

> Patrons are permitted to remove and transport food from open plates to and from the dining area to the salad bar. The risk of the food spillage from the plates is obvious and directly related to the self service nature of the restaurant. Thus, where the food is not contained except for an open plate and food spills occur, knowledge of the foreseeable risks of such an operation is imputed to Ruby Tuesday.

(Opp. Br. 8-9). But Plaintiffs' theory of the case is not simply that Kelly's fall was caused by salad dressing or another substances that had been spilled on the tile near the salad bar; instead, Plaintiffs contend that foreseeable spills on nearby carpeting resulted in a "buildup of grease within the carpeting that tracked onto the rubber tips of Mr. Kelly's crutches and resulted in his

---

[4] As a federal court sitting in diversity, this Court must predict how the highest state court would rule on a matter of state law. See Erie R.R. Co. v. Tompkins, 304 U.S. 64 (1938); Packard v. Provident Nat. Bank, 994 F.2d 1039, 1046 (3d Cir.1993).

8

fall." The Plaintiffs' theory is supported by the report prepared by Plaintiffs' expert, Michael Natoli. After a careful review of the relevant case law, this Court concludes that Plaintiffs' theory falls outside the mode-of-operation rule. While it is entirely conceivable that Kelly's fall was the result of grease from a nearby carpet having been tracked onto the tile floor by Kelly's crutch, this Court is unwilling to hold that Ruby Tuesday engaged in a "mode-of-operation" that created the kind of systemic, foreseeable risk of harm that obviates the need for plaintiff to establish actual or constructive notice.

The present case is analogous to Carroll v. New Jersey Transit, in which a plaintiff sued the New Jersey Transit Corp. after he slipped on dog feces and fell down the steps of a Newark City Subway station. 366 N.J. Super. 380, 384 (App. Div. 2004). The Appellate Division stated in dicta that the mode-of-operation rule did not apply in part because there was insufficient evidence "to suggest that, as a matter of probability, the presence of dog feces on the subway steps was 'likely to occur as a result of the nature of the defendant's business, the property's condition, or a demonstrable pattern of conduct or incidents.'" Id. at 390 (quoting Nisivoccia, supra, 175 N.J. at 563) (internal brackets omitted). In short, this Court is not willing to hold that Ruby Tuesday should have been on notice that patrons and wait staff would spill food on the carpet, the carpet would aggregate grease, and that grease would then be tracked back to the tiles, thereby creating a dangerous condition at the salad bar. This case is unlike the other "self-service" cases in which the mode-of-operation rule was held to apply, because in those cases, the plaintiff's injury flowed *directly* from the foreseeable set of risks inherent in a self-service mode of operation. In the present case, the Court is at a loss as to why the existence of a self-service salad bar in a separate portion of the restaurant would pose a risk of carpet grease

9

accumulation-and-backtrack that is materially greater than the baseline level of risk that would attend the regular traffic of wait staff shuttling food and drinks to and from tables in the absence of a self-serve salad bar.

In declining to apply the mode-of-operation rule, the Court must emphasize that "[t]he rule is a very limited *exception* to the traditional rules of business premises liability . . . ." Carroll, 366 N.J. Super. at 389 (emphasis added). This Court is especially reluctant to give the mode-of-operation rule a broad reading in light of the strict construction the doctrine received in Cordasco and Cashour. Therefore, Plaintiffs may survive summary judgment only by showing that Ruby Tuesday had actual or constructive notice of the dangerous condition. See Cordasco, supra, 2011 WL 5118996 at *3. Because Plaintiffs have failed to establish that there is a genuine dispute as to whether Defendant had such notice, the Court will grant summary judgment to Ruby Tuesday.

### III. CONCLUSION

For the foregoing reasons, the Court will grant Ruby Tuesday's motion for partial summary judgment on Plaintiffs' negligence and *per quod* claims. An appropriate order accompanies this Opinion.

                                                           s/ Stanley R. Chesler
                                                          STANLEY R. CHESLER
                                                          United States District Judge

DATED: September 3, 2013